**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**

| | |
|---|---|
| Tim Clark; Johanna Clougherty; Michael Clougherty; on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Goldline International, Inc., <br><br> Defendant. | C.A. No. 6:10-cv-01884-JMC <br><br> **ORDER AND OPINION** |

This case is before the court on Defendant Goldline International, Inc.'s Motion to Dismiss or Stay Proceedings and Compel Arbitration [Entry # 15] under section 3 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (2010). Having carefully reviewed the pleadings, the motions and memoranda, and the applicable law, the court grants Goldline's Motion to Dismiss and Compel Arbitration.

**FACTUAL AND PROCEDURAL BACKGROUND**

Goldline offers its clients a full range of precious metals products, including gold, silver, and platinum coins and bars, as well as rare numismatic coins. Goldline requires its clients to read and sign an Account and Storage Agreement ("Account Agreement"), which contains an Arbitration Agreement. The Account Agreement defines the terms of the transaction, including the rights and responsibilities of both the client and Goldline, and the client must accept these terms as a condition

1

of finalizing their transaction with Goldline. According to Goldline, each of the Plaintiffs named in this lawsuit signed and agreed to the terms of the Account Agreement.

Plaintiffs and proposed class representatives Tim Clark, Johanna Clougherty, and Michael Clougherty ("Plaintiffs") brought this putative class action against Goldline to recover damages arising from Goldline's alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* (2010), various state unfair and deceptive trade practice laws, and unjust enrichment with respect to Goldline's sales and marketing of numismatic coins and bullion. Plaintiffs allege, in pertinent part, that "Goldline grossly overcharges for its numismatic coins and bullion, falsely and deceptively claims that its products are 'good' investments, and its sales persons misrepresent themselves as 'Investment Advisors' or 'Financial Advisors' . . . and imply that they have a fiduciary responsibility to get customers the most return on their investments," despite the fact that "Goldline products are, in fact, a bad investment, and [Goldline's] marketing scheme is nothing more than a scam designed to induce market-wary investors to purchase numismatic coins and bullion worth far less than represented by Goldline and its outside associates." [Entry # 1, ¶ 3]. According to Plaintiffs, Goldline's scheme requires that its clients enter into its Account Agreement for the purchase, sale and storage of the coins and bullion. As a result of this allegedly deceptive scheme to defraud Plaintiffs and the class, Plaintiffs allege that Goldline has received substantial profits at Plaintiffs' expense and seek to recover for the economic loss they have suffered.

Defendants move to dismiss this action and compel Plaintiffs to arbitrate any and all disputes pursuant to the terms of their agreement with Goldline. Plaintiffs, however, challenge the validity of the Arbitration Agreement.

## LAW/ANALYSIS

The purpose of the Federal Arbitration Act ("FAA") is to "overcome courts' refusals to enforce agreements to arbitrate." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). Consequently, the FAA reflects "a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983); 9 U.S.C §§ 1-16. Arising out of this "liberal policy" is the Supreme Court's mandate that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. Of Trs.,* 489 U.S. 468, 475-76 (1989).

Section 2 of the FAA provides that agreements to arbitrate found in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 3 of the FAA provides the means by which a party may seek a stay of pending litigation and a court order compelling arbitration. *See* 9 U.S.C. § 3. Despite these policies favoring arbitration, long-standing Supreme Court precedent has exclusively given to federal courts the authority to evaluate the validity of arbitration agreements. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967). As the Supreme Court recently reiterated, "[i]f a party challenges the validity under [9 U.S.C.] § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under [9 U.S.C.] § 4." *See Rent-A-Center, West, Inc. v. Jackson,* 130 S. Ct. 2772, 2778 (2010). Therefore, a court's "initial inquiry is whether the parties agreed to arbitrate their dispute." *Sydnor v. Conesco Fin. Serv. Corp.,* 252 F.3d 302, 305 (4th Cir. 2001) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985)).

In *Whiteside v. Teltech Corp.*, the United States Court of Appeals for the Fourth Circuit established a four part test to determine whether a litigant can compel arbitration under the FAA. 940 F.2d 99, 102 (4th Cir. 1991). Under this test, the litigant must demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute." *Id.* In this case, there is a dispute between the parties, and there is an Account Agreement that includes an arbitration provision governing Plaintiffs' claims herein. Additionally, the contract involves interstate commerce since Goldline, a Delaware corporation with its headquarters in California, transacts business with customers world-wide. In fact, Goldline is alleged to have engaged in commerce, for the sale of products across state lines, with Plaintiff Clark, a citizen of Oregon, and Plaintiffs Michael and Johanna Clougherty, both citizens of Arizona . [Entry # 1, at 2 ¶¶ 5-7]. Finally, Plaintiffs have refused to submit their claims to arbitration. At issue in this case, then, is whether the arbitration provision is valid.

When a party specifically challenges an agreement to arbitrate, the court must evaluate that challenge and the validity of the agreement by "apply[ing] ordinary state-law principles that govern the formation of contracts." *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). Under South Carolina law, "[u]nless the parties agree to a different rule, the validity and interpretation of a contract is ordinarily to be determined by the law of the state in which the contract was made." *Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 551-52, 436 S.E.2d 182, 184 (Ct. App. 1993). Furthermore, "under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." *Nucor*

*Corp. v. Bell,* 482 F. Supp. 2d 714, 728 (D.S.C. 2007). Here, the court will apply California law because the parties agreed that California law would govern disputes arising out of their Account Agreement. [Entry # 20-1, at 16].

**Unconscionability**

Plaintiffs argue that the arbitration agreement at issue in this case is an unconscionable contract of adhesion. According to the United States Supreme Court, "generally applicable contract defenses such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements . . . ." *Doctor's Associates, Inc. v. Cassarotto*, 517 U.S. 681, 687 (1996). The "[p]arty resisting arbitration bears the burden of proving claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).

Under California law, a contract is unconscionable if it is **both** procedurally and substantively unconscionable. *See Armendariz v. Found. Health Psychare Servs., Inc.,* 24 Cal. 4th 83, 114 (2000). In conducting an analysis of a potentially unconscionable contract, California courts first determine whether the contract in question is a contract of adhesion. *See Id.* at 113. "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Id.* (citing *Neal v. State Farm Ins. Cos.,* 188 Cal. App. 2d 690, 694 (1961)). If the court determines that the contract is adhesive, then the court inquires as to whether "other factors are present which, under established legal rules - legislative or judicial - operate to render it [unenforceable]." *Id.* (citing *Graham v. Scissor-Tail*, 28 Cal. 3d 807, 820 (1981)). The court finds that the Account Agreement is an adhesive contract because it is a standard form contract that plaintiffs were required to sign as a condition of their transaction with Goldline, the party that, by

virtue of its size, had "superior bargaining strength . . . ." *Id.* at 114. However, "[t]he adhesive nature of the contract will not always make it procedurally unconscionable. When bargaining power is not grossly unequal and reasonable alternatives exist, oppression typically inherent in adhesion contracts is minimal." *Roman v. The Superior Court of Los Angeles Cty.*, 172 Cal. App. 4th 1462, 1471 (Cal. App. 2d 2009).

A.     **Procedural Unconscionability**

"Procedural unconscionability focuses on the elements of oppression and surprise." *Roman*, 172 Cal. App. 4th at 1469; *see also Armendariz*, 24 Cal. 4th at 114. "Oppression," for the purposes of unconscionability analysis, is defined as the "'inequality of bargaining power which results in no real negotiation and an absence of meaningful choice.'" *Roman*, 172 Cal. App. 4th at 1469 (citing *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 480 (Cal. App. 2d 2006)). "Surprise" is recognized as "the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position." *Id.*

California law requires that Plaintiffs establish both unequal bargaining power and an absence of meaningful choice in order to show that the arbitration agreement is oppressive and therefore procedurally unconscionable. *Id*. Plaintiffs begin by arguing that neither they nor the potential class members are substantial business concerns like Goldline. In addition, Plaintiffs argue that, as first time buyers, their lack of sophistication also contributes to disparities in bargaining power in relation to Goldline. The court recognizes that as individual and unsophisticated buyers of gold coin and gold investment vehicles, Plaintiffs were subject to significant size and bargaining strength disparities. But these disparities in size and sophistication are not enough because inequality of bargaining power alone will not invalidate an arbitration agreement. *See Gilmer v.*

6

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). In other words, Plaintiffs must also establish that there were no meaningful alternatives to Goldline. *See Roman*, 172 Cal. App. 4th at 1469.

In addressing the issue of absence meaningful choice, Plaintiffs imply that they were "forced to enter into the Arbitration Agreement . . . ." because of their unequal bargaining power and lack of sophistication. [Entry # 20, at 8]. Plaintiffs rely on *Simpson v. M.A. of Myrtle Beach, Inc.* to support this argument because they claim they lacked " the business judgment necessary to make them aware of the implications of the agreement . . . ." 373 S.C. 14, 27 (2007). In *Simpson*, the plaintiff sued the defendant auto dealer from whom she purchased an automobile for alleged violations of the South Carolina Unfair Trade Practices Act among other causes of action. *Id.* The plaintiff signed a contract that included an arbitration clause, and the auto dealer sought to stay the court proceeding and compel arbitration. *Id.* The South Carolina Supreme Court upheld a denial of the auto dealer's motion to compel arbitration in part because the plaintiff suffered an absence of meaningful choice - a conclusion based in large part on the fact that the plaintiff purchased the automobile as a "necessity . . . intended for use as [plaintiff's] primary transportation, which is critically important in modern society." *Id* at 26, 33. The Court coupled the fact that the plaintiff lacked sufficient business judgment with the fact that the plaintiff purchased an automobile that was a necessity to arrive at the conclusion that the plaintiff had no meaningful choice thereby rendering the arbitration agreement unconscionable. *Id.* at 27. But the *Simpson* facts are distinguishable from the facts in the instant case because gold numismatic coins and gold based investments are not "necessities." Furthermore, contrary to Plaintiff's central assertions, the disparities between Goldline's size and sophistication and Plaintiffs' lack thereof does not mean that they were forced

to transact business with Goldline. Plaintiffs have presented no evidence that Goldline was the only dealer of gold coins and gold based investments with whom they could do business. Consequently, Plaintiffs fail to establish that there was an absence of meaningful choice.

The court now turns to an examination of whether Goldline's arbitration agreement contained an element of surprise sufficient to establish procedural unconscionability. Under California law, surprise is evaluated by examining the extent to which the terms of arbitration agreements are hidden within the contract's text. *See Roman*, 172 Cal. App. 4th at 1469. Plaintiffs rely on *Simpson* to support their assertion that Goldline's Arbitration Agreement is inconspicuous. In *Simpson*, the arbitration agreement was written entirely in small text. *See Simpson*, 373 S.C. at 27-28. The South Carolina Supreme Court found that the arbitration clause was "embedded in paragraph ten (10) of sixteen (16) total paragraphs included on the page." *Simpson*, 373 S.C. at 28. In the instant case, the Arbitration Agreement is neither hidden nor embedded because the second page of Goldline's Account and Storage Agreement, which appears below, outlines and lists its "Contents":

## CONTENTS — ACCOUNT AND STORAGE AGREEMENT

| | |
|---|---|
| A. Placing An Order | 1 |
| B. Deliveries | 2 |
| C. Refunds/Returns | 2 |
| D. Price Guarantee Program | 3 |
| E. Payments, Security Agreement and Liquidations | 4 |
| F. Account Matters | 6 |
| G. Storage | 7 |
| H. Disclaimer of Warranties | 9 |
| I. Considerations for Investors | 10 |
| J. Other Terms and Conditions | 13 |
| K. Arbitration Agreement | 14 |
| Special State Refund Policies | 17 |
| Signature Page | 23 |

[Entry # 20-1, at 2]. The Arbitration Agreement is labeled section "K" and is specifically listed as a separate section in the table of contents. This table of contents lists thirteen distinct sections. Each section is separated by a line ostensibly designed to facilitate reading ease. Each section is also coupled with the number of the page where it can be found within the body of the Account

Agreement. The table of contents also indicates that the Arbitration Agreement can be found on page fourteen of the text of Goldline's Account and Storage Agreement.

The pertinent sections of the Arbitration Agreement are found in the body of the Account Agreement. The first clause of the Arbitration Agreement appears in **bold** letters and is **CAPITALIZED**:

> **K. Arbitration Agreement**
> **1. CLIENT AGREES TO ARBITRATE ALL CONTROVERSIES BETWEEN CLIENT AND GOLDLINE INCLUDING ANY OF GOLDLINE'S CURRENT OR FORMER OFFICERS, DIRECTORS, EMPLOYEES, OR AGENTS ARISING OUT OF OR RELATING IN ANY WAY TO ANY TRANSACTION WITH GOLDLINE, CLIENT'S ACCOUNT, ANY ACCOUNT THAT CLIENT CAUSES TO BE OPENED IN THE FUTURE, OR ANY SERVICE PROVIDED BY GOLDLINE, INCLUDING BUT NOT LIMITED TO TRANSACTIONS OF ANY KIND MADE ON CLIENT'S BEHALF. THIS ARBITRATION AGREEMENT INCLUDES THE DETERMINATION OF THE SCOPE OR APPLICABILITY OF THIS AGREEMENT TO ARBITRATE.**

[Entry 20-1, at 16-17]. The second clause is not in bold but is written in normal type:

> 2. The parties agree that any arbitration will be administered by JAMS under its Comprehensive Arbitration Rules and Procedures when the amount in controversy is greater than $250,000 and JAMS' Streamlined Arbitration Rules when the amount in controversy is less than or equal to $250,000. The arbitration proceedings shall be kept in strictest confidence. The parties agree the exclusive venue for arbitration proceedings, including any arbitration hearing, will be Santa Monica, California. The parties further agree to the personal jurisdiction of the Superior Court, Los Angeles County, State of California, to enforce these arbitration provisions described in this Agreement. Client makes this arbitration agreement on his or her behalf and on behalf of client's heirs, administrators, executors, successors and assigns and all persons claiming a beneficial interest in Client's account.

[Entry 20-1, at 16-17]. Additionally, the remainder of the Arbitration Agreement contains clauses that alternate between those written in bold capital letters and small plain text.

Given the fact that the Account and Storage Agreement contains a table of contents listing the Arbitration Agreement as a distinct section within the body of the contract, and since the table of contents provides the page number where the Arbitration Agreement can be found, the court finds that the agreement to arbitrate is not inconspicuous such that it contains an element of surprise sufficient to establish procedural unconscionability. Instead, the arbitration provision contained in Plaintiffs' Account and Storage agreement is conspicuously disclosed.

In addition, the court is not persuaded that Plaintiffs were surprised by the terms of the Arbitration Agreement because by signing the agreement they manifested their assent to be bound by its terms. *See, e.g., Stewart v. Preston Pipeline, Inc.*, 36 Cal. Rptr. 3d 901, 921 (Cal. App. 6th 2005) (citing *Brookwood v. Bank of America*, 53 Cal. Rptr. 2d 515 (Cal. App. 4th 1996) (holding employee bound by arbitration provision whether or not she was aware of it when she signed the contract)). For example, the sixth clause of the Arbitration Agreement reads as follows:

> **6. BY SIGNING ON PAGE 23, CLIENT CONFIRMS THAT HE OR SHE HAS READ AND UNDERSTOOD THIS SECTION AND VOLUNTARILY AGREES TO BINDING ARBITRATION. IN DOING SO, CLIENT VOLUNTARILY GIVES UP IMPORTANT CONSTITUTIONAL RIGHTS TO TRIAL BY JUDGE OR JURY, AS WELL AS RIGHTS TO APPEAL.**

[Entry # 20-1, at 18]. Like other portions of the Arbitration Agreement, this conspicuously disclosed clause put Plaintiffs on notice that their signatures indicated their assent to the terms of the Arbitration Agreement as a whole. This comports with federal cases that hold that arbitration agreements governed by the FAA will not be set aside on the ground that the arbitration clause was not noticed or explained since the party signing the agreement is presumed to have read it. *See*

*Adams v. Merrill Lynch, Pierce, Fenner & Smith*, 888 F.2d 696, 701 (10th Cir. 1989) (rejecting an argument of unconscionability based on a contention that the arbitration agreement was not noticed or explained to plaintiffs). Therefore, the court is not persuaded that Plaintiffs were surprised by the terms of the agreement to arbitrate because the Arbitration Agreement is straightforward and conspicuous and Plaintiffs were always free to decline the transaction with Goldline. *See, e.g., Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 397-98 (5th Cir. 2006).

For the foregoing reasons, the court finds that the Arbitration Agreement is not procedurally unconscionable; however, the court will continue its discussion by analyzing substantive unconscionability.

**B.     Substantive Unconscionability**

The court now turns to an examination of the issue of substantive unconscionability. Plaintiffs assert that Goldline's power to unilaterally select an arbitrator, Goldline's limitation of remedies, and its durational limitation on those remedies establish that the Arbitration Agreement is substantively unconscionable. [Entry # 20, at 9].

Under California law, "[s]ubstantive unconscionability focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results." *Roman*, 172 Cal. App. 4th at 1469-70. An arbitration provision can only be deemed substantively unconscionable if "it involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." *Brown v. Wells Fargo Bank, N.A.*, 85 Cal. Rptr. 3d 817, 831 (Cal. App. 2d 2008). "The phrases 'harsh,' 'oppressive,' and 'shock the conscience' are not synonymous with 'unreasonable.' Basing an unconscionability determination on the reasonableness of a contract provision would inject an inappropriate level of judicial subjectivity into the analysis." *Walnut

*Producers of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 647 (Cal. App. 3d 2010).

Plaintiffs begin by arguing that the JAMS arbitration will be biased in Goldline's favor because Goldline "routinely contracts" with JAMS. [Entry # 20, at 9]. However, courts should "decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators." *Mitsubishi*, 473 U.S. at 634. The Arbitration Agreement in the Account Agreement at issue here imposes on **both** Plaintiffs and Goldline an obligation to arbitrate any dispute related to the Account Agreement or their transaction with JAMS. This is evidenced by the fact that the Arbitration Agreement, section K-2, begins by stating that "[t]he **parties** agree that any arbitration be administered by JAMS . . . ." [Entry # 20-1, at 17] (emphasis added). The United States Supreme Court has expressly upheld the agreed upon rules and procedures that will govern arbitration pursuant to a contract, stating that parties are free to "specify by contract the rules under which the arbitration will be conducted." *Volt*, 489 U.S. at 479.

Furthermore, the suggestion that Goldline obtains some undue advantage because the agreement requires arbitration to be conducted by JAMS is without merit. JAMS is a nationally recognized body of retired judges and attorneys which provides a neutral and objective forum for the arbitration of disputes. In addition, under the JAMS rules, each party has input in selecting a neutral arbitrator. For example, on October 4, 2010, Plaintiffs, like Goldline, submitted their strike-list of proposed arbitrators in the pending JAMS' proceedings. [Entry # 31-2]. Neither of the arbitrators Plaintiffs struck was selected. [Entry # 31, at 12, n. 5]. There is no evidence (or even suggestion) that the selection of arbitrators was biased or otherwise unfair.

Plaintiffs also assert that the arbitration provision is unconscionable because it limits

potential remedies and claims. Likewise, Plaintiffs argue that the limitation of remedies is "one-sided" because the Arbitration Agreement limits Goldline's "liability in all claims" to the "amount actually paid by the client for the items in dispute less the items' fair market value." [Entry # 20-1, at 17-18]. The Arbitration Agreement also requires that customers waive their rights in advance to claims for "indirect, incidental, additional, punitive, exemplary or consequential damages even if Goldline has been advised of the possibility of such damages." *Id*. at 17.

In this case, Plaintiffs seek relief under RICO requesting treble damages, damages pursuant to various state unfair and deceptive trade practice laws, and unjust enrichment. The United States Supreme Court has held that in cases where it is uncertain how the arbitrator will construe remedial limitations, "the proper course is to compel arbitration." *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-07 (2003) (holding that "the issue of whether statutory treble damages under RICO statute were barred was not yet ripe because there was some question as to whether treble damages were punitive or compensatory, and it was unclear how an arbitrator would rule on the issue"); *see also Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 606 S.E.2d 752, 759 (S.C. 2004) (holding that complaints about the unavailability of treble damages under the South Carolina Unfair Trade Practices Act must first be presented to the arbitrator) (citing *Hawkins v. Aid Assn. For Lutherans*, 338 F.3d 801 (7th Cir. 2003)). Accordingly, the court will not speculate that the Arbitration Agreement deprives Plaintiffs of all remedies; instead, Plaintiffs must first pursue their remedies through arbitration.

Plaintiffs also argue that the one-year limitation on bringing a claim may prevent some class members from "effectively vindicating their rights." [Entry # 20, at 10]. First, the court notes that whether a class is appropriately certified in this case or otherwise is yet to be determined.

14

Second, whether the Account Agreement precludes any putative class member from bringing a claim has no bearing on the validity or enforceability of the arbitration provisions. Such issues raised by Plaintiffs must be determined by an arbitrator, not this court. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003).

Further, just as parties can agree to contractually waive certain rights, they can also agree to limit the time for bringing an action. *See Order of United Commercial Travelers v. Wolfe,* 331 U.S. 586, 608 (1947) (finding that "in the absence of a controlling statute to the contrary, a provision in a contract may validly limit . . . the time for bringing an action . . . to a period less than that prescribed in the general statute of limitations provided that the shorter period itself shall be a reasonable period"). In addition, under California law, shortened limitations periods will be upheld if they are reasonable. *See Capehart v. Heady*, 206 Cal. App. 2d 386, 388 (Cal. App. 1962); *See also Hambrecht & Quist Venture Partners v. American Medical International, Inc.*, 46 Cal. Rptr. 2d 33, 43 (Cal. App. 1995). In *Capehart*, the plaintiff challenged a three month limitation on the time to initiate an action found in a lease agreement. *Id*. at 389. The court found that the three month limitations period was not unreasonable because it caused no unfair advantage to the defendant or disadvantage to the plaintiff. *Id.* at 391. Furthermore, the court found the three month limitations period in *Capehart* reasonable despite the fact that it only applied to the plaintiff and not the defendant. *Id.* at 390. Similarly, in *W. v. Henderson*, the court upheld a six month limitation as reasonable despite the lack of mutuality in the application of the limitations period. 227 Cal. App. 3d. 1578, 1588 (Cal. App. 1991). In the instant case, Section K-5 of the Arbitration Agreement requires that the "[c]lient agrees that any claim, arbitration, lawsuit, legal action, dispute or proceeding of any kind arising out of or relating to any transaction between Client and Goldline is

15

barred unless commenced within one (1) year from the date of the transaction." [Entry # 20-1, at 18]. The text of this limitations clause ostensibly applies only to Plaintiffs; however, in this case Plaintiffs were given neither three nor six months but instead one year in which to commence any action. Plaintiffs fail to present any evidence that the limitations period in the Arbitration Agreement is unreasonable. Under California law, the one year limit on the time in which claims may be brought against Goldline is, therefore, not unconscionable.

## CONCLUSION

For the foregoing reasons, the court finds that Goldline's Arbitration Agreement is valid because it is neither substantively nor procedurally unconscionable. Accordingly, the court grants Goldline International, Inc.'s Motion to Dismiss and Compel Arbitration [Entry #15]. This action is dismissed without prejudice.

**IT IS SO ORDERED.**

s/ J. Michelle Childs  
United States District Judge

Greenville, South Carolina  
November 30, 2010